UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CRISHNA SUZANN LEE,<br><br>    Plaintiff,<br><br>    v.<br><br>KILOLO KIJAKZI, Acting Commissioner of Social Security<br><br>    Defendant. | Case No. 2:22-cv-00068-JDP (SS)<br><br>ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING COMMISSIONER'S MOTION FOR SUMMARY JUDGMENT<br><br>ECF Nos. 17 & 19 |

Plaintiff challenges the final decision of the Commissioner of Social Security ("Commissioner") denying her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. Both parties have moved for summary judgment. ECF Nos. 17 & 19. For the reasons discussed below, plaintiff's motion for summary judgment is granted, the Commissioner's is denied, and this matter is remanded for further proceedings.

**Standard of Review**

An Administrative Law Judge's ("ALJ") decision denying an application for disability benefits will be upheld if it is supported by substantial evidence in the record and if the correct legal standards have been applied. *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006). "'Substantial evidence' means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). However, the court will not affirm on grounds upon which the ALJ did not rely. *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) ("We are constrained to review the reasons the ALJ asserts.").

A five-step sequential evaluation process is used in assessing eligibility for Social Security disability benefits. Under this process the ALJ is required to determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a medical impairment (or combination of impairments) that qualifies as severe; (3) whether any of the claimant's impairments meet or medically equal the severity of one of the impairments in 20 C.F.R., Pt. 404, Subpt. P, App. 1; (4) whether the claimant can perform past relevant work; and (5) whether the claimant can perform other specified types of work. *See Barnes v. Berryhill*, 895 F.3d 702, 704 n.3 (9th Cir. 2018). The claimant bears the burden of proof for the first four steps of the inquiry, while the Commissioner bears the burden at the final step. *Bustamante v. Massanari*, 262 F.3d 949, 953-54 (9th Cir. 2001).

**Background**

Plaintiff filed an application for DIB on February 6, 2017, alleging disability beginning September 30, 2016. Administrative Record ("AR") 310-13. After her application was denied both initially and upon reconsideration, plaintiff appeared and testified at a hearing before an ALJ on April 3, 2019. AR 82-109, 156-60, 164-68. The ALJ issued an initial decision finding that plaintiff was not disabled on May 8, 2019. AR 132-48. After the Appeals Council vacated that decision and remanded for additional proceedings, plaintiff appeared and testified at a second hearing on January 11, 2021. AR 48-81, 151-53. On March 30, 2021, the ALJ issued a second decision finding that plaintiff was not disabled. AR 25-41. Specifically, the ALJ found:

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2021.

2. The claimant has not engaged in substantial gainful activity since September 30, 2016, the alleged onset date.

   \* \* \*

3. The claimant has the following severe impairments: chronic fatigue syndrome and hypothyroidism.

   \* \* \*

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

   \* \* \*

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except that she can occasionally perform postural activities, should avoid climbing of ladders, ropes or scaffolds, and should avoid working at heights or around heavy or hazardous machinery.

   \* \* \*

6. The claimant is capable of performing past relevant work as a purchasing agent, financial manager, and employment manager. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity.

   \* \* \*

7. In addition to past relevant work, there are other jobs that exist in significant numbers in the national economy that the claimant also could perform, considering the claimant's age, education, work experience, and residual functional capacity, prior to April 29, 2018.

   \* \* \*

8. The claimant has not been under a disability, as defined in the Social Security Act, from September 30, 2016, through the date of this decision.

AR 28-41 (citations to the code of regulations omitted).

Plaintiff requested review by the Appeals Council, which denied the request. AR 1-7. She now seeks judicial review under 42 U.S.C. §§ 405(g), 1383(c)(3).

**Analysis**

Plaintiff advances two primary arguments. First, she argues that the ALJ discounted her subjective symptom testimony without providing clear and convincing reasons for doing so. ECF No. 17 at 9-14. Second, she argues that the ALJ failed to account for her impairments in her residual functional capacity ("RFC") assessment. *Id.* at 2-9. Because I agree with plaintiff's argument that the ALJ improperly discounted her subjective symptom testimony and grant summary judgment on that basis, I do not reach plaintiff's second argument.

Plaintiff testified to the limiting effects of her chronic fatigue syndrome and her hypothyroidism in hearings held in 2019 and 2021. The ALJ provided an adequate summary of the relevant testimony from the 2019 hearing:

> The claimant testified that she started having symptoms of chronic fatigue syndrome six months after she started her last job. She said the symptoms slowly got worse. She testified she always had the Epstein-Barr virus, which is what triggers her chronic fatigue syndrome. . . . She testified she had hypothyroidism and she took medication for it every day. She said the medication was helpful. She testified she was 80-85% bedbound or housebound.

AR 34 (citing AR 81-109). At the 2021 hearing, plaintiff testified that her chronic fatigue syndrome had worsened significantly. AR 56-57, 60-62. She testified that her brain fog had become more problematic and that she had both long-term and short-term memory loss. AR 57. She stated that the hardest part of working a full-time job is the "unrelenting fatigue." AR 63. She added, "there are times when it gets so bad you literally collapse right where you are" without any advance notice. AR 63.

At steps two and three, the ALJ found that plaintiff had chronic fatigue syndrome and hypothyroidism, that both conditions were severe, and that neither met the requirements of any of the listed impairments. AR 31-33. She then found that plaintiff retained the RFC to perform "light work as defined in 20 CFR 404.1567(b) except that she can occasionally perform postural activities, should avoid climbing of ladders, ropes or scaffolds, and should avoid working at heights or around heavy or hazardous machinery." AR 33-34.

In the Ninth Circuit, courts follow a "two-step analysis for determining the extent to which a claimant's symptom testimony must be credited." *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017). "'First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged.'" *Id.* (quoting *Garrison v. Colvin*, 759 F.3d 995, 1014-15 (9th Cir. 2014)). If the claimant meets this requirement and there is no evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so. This is not an easy requirement to meet: The clear and convincing standard is the most demanding required in Social Security cases." *Id*. The ALJ's reasons also must be supported by substantial evidence in the record. *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002).

The ALJ found objective evidence of plaintiff's medically determinable impairments that could reasonably be expected to produce the alleged symptoms and made no finding of malingering. AR 34. As such, the ALJ was required to supply clear and convincing reasons to support her finding that plaintiff's "allegations concerning the impairments and the impact on her ability to work are not sufficiently supported by the record as a whole." AR 35. The ALJ provided three reasons for rejecting plaintiff's symptom testimony: first, that "the laboratory and clinical findings in the medical record do not fully support the extent of her symptom allegations"; second, that plaintiff's "medical treatment throughout the record was entirely routine and conservative, including using oils, creams, vitamins, and medications"; and third, that plaintiff's "activities of daily living are inconsistent with allegations of total disability." AR 35-37.

The ALJ's first reason—that "laboratory and clinical findings" did not corroborate her symptoms—is insufficient as a matter of both law and fact. AR 35. ALJ's "may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of [symptoms]." *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005); 20 C.F.R. § 404.1529(c)(2) ("[W]e will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect our symptoms have on your

5

ability to work solely because the available objective medical evidence does not substantiate your statements."). The Ninth Circuit has emphasized that this rule is particularly relevant to the resolution of claims involving CFS, which is "defined as '*self-reported* persistent or relapsing fatigue lasting six or more consecutive months.'" *Reddick v. Chater*, 157 F.3d 715, 726 (9th Cir. 1998) (quoting Centers for Disease Control, The Chronic Fatigue Syndrome: A Comprehensive Approach to its Definition and Study, 121 Ann. of Int. Med. 954 (1994) (emphasis added by *Reddick* court)).

The ALJ listed a variety of laboratory and clinical findings but did not explain which contradicted plaintiff's allegations. *See* AR 35. Such a general litany of negative lab tests does not undermine plaintiff's CFS allegations, since "[t]here is no blood test or other objective laboratory test for chronic fatigue syndrome." *Salomaa v. Honda Long Term Disability Plan*, 642 F.3d 666, 677 (9th Cir. 2011). Indeed, the findings may support plaintiff's allegations of CFS, since she was diagnosed with CFS by an M.D. in 2016, and she tested positive for the Epstein-Barr virus antibody, *see* AR 35, which is "frequently associated with CFS," *Reddick*, 157 F.3d at 719. She also repeatedly tested positive for "high TSH," an indicator of hypothyroidism. AR 35. Plaintiff's medical records include numerous reports of CFS symptoms, including severe fatigue, malaise, brain fog, depressed mood, anxiety, insomnia, poor memory, sinusitis, and chronically sore throat. *See, e.g.*, AR 462-63, 466, 484, 494-98, 505, 508, 515, 551, & 565. The ALJ discounted these reports because they relied on plaintiff's "subjective complaints," electing instead to credit objective clinical findings such as that plaintiff presented "normal levels of alertness and orientation." AR 35, 37, & 38. The ALJ's preference for cursory objective observations over plaintiff's self-reports to her medical providers contravenes this circuit's case law, which holds that such reasoning "runs counter to the [Centers for Disease Control's] published framework for evaluating and diagnosing CFS." *Reddick*, 157 F.3d at 726; *see also Rau v. Comm'r of Soc. Sec.*, No. 14-CV-03534-DMR, 2016 WL 705983, at *7 (N.D. Cal. Feb. 23, 2016) (explaining that CFS is diagnosed based on self-reports and by ruling out other possible causes).

The ALJ's second reason—that "medical treatment throughout the record was entirely

routine and conservative," AR 35—is insufficient to discredit plaintiff's testimony because of the nature of CFS. The record reflects that plaintiff consistently sought treatment from both her primary care doctor and from a naturopathic doctor for the recognized symptoms of CFS. *See* AR 456-76, 481-91, 492-98, 500-33, 550-81. The ALJ does not identify a less-conservative treatment option rejected by plaintiff, and there is no indication that further treatment for CFS would be fruitful. *Cf. Reddick*, 157 F.3d at 727 ("The ALJ's focus on pain medication and treatment is misplaced, as the CDC has made it clear that no definitive treatment for CFS exists."); *Lapeirre-Gutt v. Astrue*, 382 F. App'x. 662, 664 (9th Cir. 2010) ("A claimant cannot be discredited for failing to pursue non-conservative treatment options where none exist.")

Lastly, plaintiff's activities of daily living do not provide a sufficient basis for discounting her symptom testimony. The ALJ noted that plaintiff "reported to sources in the record that she was able to shop in stores (with the use of a scooter), help her mom move out from her home, go to the movies, clean the house, and feed her cat." AR 36. The ALJ also noted that plaintiff testified at her 2019 hearing that she could "do laundry and prepare meals." AR 36.

This description misrepresents plaintiff's statements in service of a broadly inaccurate characterization of her ability to function. The ALJ's statement that plaintiff can "clean the house" appears drawn from a treatment note indicating that, on certain days when she manages to get a lot of sleep and wakes up at two in the afternoon, she has extra energy for activities like cleaning the house. AR 558. Similarly, the ALJ noted that plaintiff can "go to the movies," citing a treatment note stating that even seemingly sedentary activities like "sit[ting] in a chair for more than an hour" or going "to a movie for 2.5 hours" leave plaintiff "in pain and exhausted." AR 553. More generally, plaintiff testified at her first hearing that on a "bad day" she is only able to get up briefly take her pills and eat a meal before she has to get "right back in the bed." AR 98. She testified that she could only prepare "[v]ery simple" meals using a microwave and that when she is able to cook, she tries to prepare her meals "for four days at one time." AR 98. She stated that she does her own laundry, but that her washer and dryer are in her apartment and that even doing "one load . . . takes a lot out of [her]." AR 100. At her 2021

7

hearing, she testified that she now orders groceries online through a delivery service and that her niece often comes over to help with household chores. AR 60-61.

Plaintiff's activities of daily living do not contradict her symptom testimony or allegations of total disability. The record broadly supports plaintiff's characterization of her activities as "performed on a very limited basis, often with assistance, and only as allowed by [her] condition." ECF No. 17 at 12. As the Ninth Circuit held in *Reddick*, activities of daily living that are "sporadic and punctuated by rest" do not contradict allegations of severe CFS symptoms, since "CFS is 'characterized by periods of exacerbation and remission.'" 157 F.3d at 722 (quoting *Cohen v. Secretary of Dept. of Health & Human Servs.*, 964 F.2d 524, 530 (6th Cir. 1992)). "[D]isability claimants should not be penalized for attempting to lead normal lives in the face of their limitations." *Id.*; *see also Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) ("[M]any home activities are not easily transferable to . . . the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication."); *Cooper v. Bowen*, 815 F.2d 557, 561 (9th Cir. 1987) (explaining that disability claimants need not "vegetate in a dark room" in order to be eligible for benefits) (internal quotes and citations omitted).

The ALJ's failure to set out specific, clear, and convincing reasons to discount plaintiff's subjective symptom testimony deprives the court of the ability to determine whether her conclusions are supported by substantial evidence. This error warrants remand to allow for proper consideration of the evidence of record. *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015) ("A district court may reverse the decision of the Commissioner of Social Security, with or without remanding the case for a rehearing, but the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.") (internal quotes and citations omitted).

Accordingly, it is hereby ORDERED that:

1. Plaintiff's motion for summary judgment, ECF No. 17, is granted.

2. The Commissioner's cross-motion for summary judgment, ECF No. 19, is denied.

3. The matter is remanded for further proceedings consistent with this order.

8

    4.  The Clerk of Court is directed to enter judgment in plaintiff's favor.

IT IS SO ORDERED.

Dated:   March 31, 2023                    /s/ Jeremy Peterson
                                            JEREMY D. PETERSON
                                            UNITED STATES MAGISTRATE JUDGE